## MUSE *v.* STATE.

(Division A. Nov. 10, 1930.)

[130 So. 693. No. 28965.]

**Smith & Smith,** of Holly Springs, for appellant.

**W. A. Shipman,** Assistant Attorney-General, for the state.

**McGowen, J.**, delivered the opinion of the court.

On an indictment for murder, appellant was convicted of manslaughter and sentenced to serve a term of seven years in the state penitentiary, from which judgment he appeals.

We shall not undertake to detail all the facts of this homicide. The conviction must rest upon the testimony of two witnesses who detailed a statement made by the deceased to them shortly after the difficulty, in which they stated that Hayes Walton, the deceased, was conscious at the time he made the statement, and further represented him as saying: "There is no hope for me to live, I am dying and the way I am shot there is no possible way for me to live, that I can feel the clots of blood in my side," and further stated that Elliot Muse shot him. He said he was walking down the road and did not see the boys and all at once they, Elliot Muse (the defendant) and Will Ellis Dawkins, "hollered 'hands up,' and he was shot all at the same time, and when he fell to the ground they charged up and started to hit him and 'I begged them to spare my life,' and he didn't say whether they hit him or not." It was shown that after this statement, by his consent, friends undertook to carry him to a physician at Holly Springs some miles away, but there is no showing as to what he said or how his consent was obtained. He died a few minutes after reaching the hospital at Holly Springs. The attending physician was not offered as a witness, nor is it shown that he was available as such, nor is it shown that he advised the declarant of his physical condition.

The defendant's evidence, if believed, established a case of self-defense. Muse and Dawkins said they did not know Walton was near them, that they were hunting near the public road; the defendant being armed with a single-barrel shotgun, and his companion, Dawkins, had a stick. They were hunting rabbits. They said when they saw Walton first he had his double-barrel shotgun to his shoulder leveled on them, and the appellant threw his single-barrel gun to his hip and shot. A disinterested witness to some extent corroborated this statement of the appellant and his companion. Muse and Dawkins went over to where the deceased fell in the public road and took from him his double-barrel shotgun, which they did not unbreech, and delivered same intact to the officer, Whaley, who came up in a few moments and arrested the appellant and Dawkins. Walton was soon removed to the home of Kansas Phillips, to whom he made the dying statement, remained there about half an hour, was put in a car and driven to Holly Springs, where he died.

The attorney-general, in his brief, concedes that the case should be reversed and remanded.

Counsel for appellant insists that the peremptory instruction requested by him and refused by the court should have been granted, and insists now that the case should be reversed and the appellant discharged.

First, on the proposition that the dying declaration was improperly admitted by the court, on the ground that the statement was not made by the declarant under a sense of impending death, and citing many cases in our books on this question, it is our opinion, in view of the clear statement of the rule as announced by this court in the case of Lipscomb v. State, 75 Miss. 559, 23 So. 210, 230, that it is not necessary or proper for us to again re-state the rule. The declarations are clear-cut, and we do not think there is any merit in the objection to this testimony. True it is that the statements in court were made

by relatives and partisans, but both the court and the jury evidently believed these statements beyond a reasonable doubt. Usually these statements are made by declarants to relatives or members of their family, and we think the examination and cross-examination shows that the statements were made under a sense of impending death, or at least the lower court was warranted in so believing.

Second, the appellant offered to show by the witness Whaley that Walton was unconscious when he arrived upon the scene a short time after the difficulty and before Walton was removed to the home of Kansas Phillips, the main state witness. This testimony was competent for what it was worth to impeach the testimony of the witnesses as to the dying declaration that the declarant was unconscious at the time he made the declaration, and the court should have permitted this testimony to go to the jury. It was error to exclude it.

Third, the appellant offered to show by the deputy sheriff that upon his arrival at the scene he took the double-barrel shotgun, which admittedly the deceased had at the time of the difficulty, unbreeched it, and took therefrom a snapped shell. This evidence should have been permitted to go to the jury. The identification of the particular shells offered in court was not admitted, but the fact that a snapped shell similar to the one offered in court had been taken from the gun by the officer, in connection with the other testimony on that subject, should have gone to the jury, and it was error for the court to exclude it.

Fourth, the appellant sought to prove by the witness, Tom Dean, that the deceased, Hayes Walton, made a threat against the one who had carried his daughter away and married her, and "cursed and said 'I am going to kill him today.'" It was in evidence that there was some difficulty between Hayes Walton and this appellant, be-

cause a short time before, on Thursday before the homicide on Saturday, the appellant had carried Walton's daughter away from his home and married her, and that Walton was enraged and took the girl away from her husband. This evidence was offered after the overt act had been shown. The uncommunicated threat was competent to show the state of mind of the deceased, and the court should have permitted it to have gone to the jury. Likewise the same character of evidence was offered by the appellant in the testimony of Booker T. Martin, in which that witness swore that the deceased said to him: "He asked me where Louise (Walton's daughter) was at and I told him I didn't know, and he said he didn't care who had her he would beat hell out of who captured her." It was error to exclude this testimony.

It is conceded by the attorney-general that the court erred in refusing the following instruction: "The court instructs the jury for the defendants that the dying declarations of the deceased, if you believe from the evidence there were any such dying declarations of the deceased, are not entitled to the same credit and force as if the deceased were still alive and testifying in the presence of the jury, under oath; that is a species of hearsay evidence, and is intrinsically weaker than if the declarant was present and subject to cross-examination; and the jury alone are the judges of its weight and force." In the case of Lipscomb v. State, supra, a majority of the court held that it was proper to give this instruction where the state relied upon or offered dying declarations, and reached the conclusion that the giving of this instruction was not in contravention of our statute denying the court the power to instruct the jury on the weight of the evidence. This conclusion was reached on the idea that the court was announcing a principle of law to guide the jury in its deliberations, and not expressing its opinion upon the weight to be given the particular evidence in the

particular case. The court should have granted this instruction.

The refusing of this instruction requested by the appellant, and the other errors to which we have made reference, warrant the reversal of this case, and we think the defendant ought to have another trial.

Reversed and remanded.